UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANET SPENCER | ) | CASE NO. 1:13CV585 |
| Plaintiff | ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Janet Spencer Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his August 22, 2011 decision in finding that Plaintiff was not disabled because she could perform jobs that exist in significant numbers in the economy (Tr. 20). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

Plaintiff, Janet Spencer, filed her application for SSI on January 19, 2010, alleging she became disabled on December 1 1981 (Tr. 134-137). Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an ALJ (Tr. 103). On August 2, 2011, a hearing was held where Plaintiff appeared and testified before an ALJ, as did Gene Burkhammer, a vocational expert (Tr. 30-45). On August 22, 2011, the ALJ issued his decision, finding Plaintiff not

to be disabled (Tr. 11-21). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-5). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 1383(c).

## II. STATEMENT OF FACTS

Plaintiff was born December 4, 1959 (Tr. 134), and was fifty years of age when she filed her SSI application, and fifty-one years of age as of the date of the hearing. Plaintiff has an eleventh grade education, having left school in the twelfth grade prior to graduation (Tr. 31). She was working towards obtaining her GED at the time of the hearing (Tr. 32). She had also recently completed training as a nursing assistant (Tr. 33). Plaintiff had past work experience at Subway, where she was injured in 2000, as well as at Cybertron in 2001 (Tr. 142).

## III. SUMMARY OF MEDICAL EVIDENCE

Plaintiff has not received any medical treatment for her back pain since 1981 (Tr. 35). Plaintiff had surgery in 2009 after she fractured her left ankle (Tr. 192, 347). In August 2007, Plaintiff had surgical hardware removed from her left ankle, which she reported was causing her pain (Tr. 192). Thereafter, Plaintiff did not seek treatment from a physician (Tr. 41).

Plaintiff underwent a course of physical and chiropractic therapy for her left ankle in 2008 and 2009 (Tr. 196-298, 300-339). Upon discharge from treatment, chiropractor Justin Wirick, DC, noted that Plaintiff demonstrated effective progress, improvement to her overall functional range of motion in a weight-bearing capacity, and was able to maintain her daily activities (Tr. 202, 204).

In October 2008, an MRI of Plaintiff's left foot showed mild degenerative joint disease with a small amount of joint effusion (Tr. 355). However, Plaintiff's left foot MRI showed no evidence of ligament tear or inflammation; normal plantar fascia, sinus tarsi, and tarsal alignment; normal subfascial fat pad without evidence of inflammation or fibrosis; and normal flexor and extensor tendons (Tr. 355). In addition, an MRI of Plaintiff's left ankle showed mild tenosynovitis (inflammation of the lining of the sheath that surrounds a tendon) of the posterior tibial and flexor digitorum longus tendons, but her other flexor and extensor tendons were normal (Tr. 356). Plaintiff's left foot MRI revealed no other abnormalities (Tr. 356). There was no evidence of re-fracture, tear, or inflammation; bone contour and marrow were normal; medial and lateral ankle ligaments were normal and intact; sinus tarsi were normal; Achilles tendon was normal; and no muscle injury was present (Tr. 356).

In April 2009, Plaintiff underwent an assessment for a vocational rehabilitation program (Tr. 340-43). The vocational case manager documented that Plaintiff could not formulate any vocational goals, and Plaintiff "report[ed] her only vocational interests are spending time with her grandchildren" (Tr. 342). Further, Plaintiff indicated that she had not considered any work options, did not believe she could work, and "all she hopes for is to enjoy her grandchildren" (Tr. 342). Based upon Plaintiff's "limited interest and perception of limitations," the vocational case manager determined that Plaintiff was not an appropriate candidate for vocational rehabilitation services (Tr. 342).

In March 2010, Eulogio Sioson, M.D. performed a consultative examination of Plaintiff at the request of the state agency (Tr. 347-51). Plaintiff reported a history of back pain since 1981 and left ankle pain since 2000 (Tr. 347). Although Plaintiff declined to perform the heel/toe walk and squat portion of the examination, Dr. Sioson documented that Plaintiff walked normally without an assistive device and was able to get on and off the examination table without difficulty (Tr. 347). Plaintiff

reported tenderness in her lumbar spine and pain during the range of motion examination (ROM) of her shoulders and hips (Tr. 348). However, Plaintiff had no edema, no sensory deficits, and good muscle strength in her upper and lower extremities Tr. 348-49). Dr, Sioson obtained an x-ray of Plaintiff's lumbar spine, which was unremarkable (Te. 353). Specifically, Plaintiff's vertebral bodies and disc spaces were well maintained, and there was no evidence of fracture, compression, spurring, or disc space narrowing (Tr. 353). Dr. Sioson assessed Plaintiff with back and joint pain, with no apparent radiculopathy, gross deformity, or inflammatory changes in her joints (Tr. 348). Dr, Sioson opined that Plaintiff should be limited to sedentary work (Tr. 348).

In May 2011, Plaintiff sought treatment from the MetroHealth Medical Center, Family Practice Department (Tr. 382). Plaintiff complained of a stomach ulcer that was causing her heartburn (Tr. 382). However, Plaintiff did not report any back or left ankle pain (Tr. 382). Upon physical examination, Jaividhya Dasarathy, M.D. found that Plaintiff had no tenderness in her lumbar spine, exhibited full ROM, and walked with a normal gait (Tr. 383). In addition, Plaintiff's reflexes, sensation, and motor strength were normal in her upper and lower extremities (Tr. 383). Dr. Dasarathy prescribed esomeprazole to treat Plaintiff's heartburn and esophageal ulcer (Tr. 383-84).

On April 26, 2010, W. Jerry McCloud, M.D., a state agency physician, reviewed the evidence of record and found that Plaintiff was capable of performing light work (Tr. 358-364). Specifically, Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could stand/walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday (Tr. 358). Further, Dr. McCloud concluded that consultative examiner Dr. Sioson's opinion of Plaintiff's work-related limitations was overly restrictive in light of his physical examination findings and the other objective medical evidence of record (Tr. 363).

On July 7, 2010, Gerald Klyop, M.D., another state agency physician, reviewed the updated evidence of record and concurred with Dr. McCloud's opinion that Plaintiff was capable of performing light work (Tr. 365).

## IV. SUMMARY OF TESTIMONY

Plaintiff appeared and testified on her own behalf at a hearing before the ALJ (Tr 30-42). She stated that she lived with the father of her children (Tr. 30). She has five children, who ranged from age twenty-two to age twenty-eight as of the date of the hearing (Tr. 30), as well as seven grandchildren (Tr. 39). Her children lived in the Cleveland area, but did not live with her (Tr. 30). Her children work, and she and her boyfriend help care for four of the grandchildren during the week (Tr. 39). The grandchildren for whom she cared were aged three years, two years, two years, and eleven months. She would teach them their ABC's and change their diapers (Tr. 40).

Plaintiff testified that she had originally hurt her back in 1981, coinciding with her alleged onset date of disability (Tr. 34). She had not had any recent treatment for her back (Tr. 35). She fractured her left ankle while working at Subway in 2000 (Tr. 32). In 2007, she had surgery on the ankle to remove hardware (Tr. 37); she had not had any treatment for the ankle since 2007 (Tr. 36), because she did not have any insurance to pay for it (Tr. 37).

Plaintiff reported that her ankle was swollen and it was hard for her to stand on the left ankle/foot (Tr. 37). She would soak the ankle for relief, and took over-the-counter medications, Advil, and Tylenol, for the pain (Tr. 42). She took these up to four times per day, and her doctors had cautioned her about this use because of her ulcer (Tr. 42). During the day, she tried to stay off the ankle, and would elevate it with a pillow (Tr. 42).

She had recently been approved for treatment through MetroHealth Medical Center (Tr. 38), where she was treated for a gastric ulcer (Tr. 36). She had not, as of the hearing date, spoken to the MetroHealth doctors about her ankle or back problems (Tr. 42), as she was more focused on her problems with her ulcer.

As for her physical capabilities, Plaintiff estimated that she could walk for only ten minutes (Tr. 38). She thought she would be able to stand for about fifteen to twenty minutes, and thought she could lift about twenty pounds (Tr. 38).

However, Plaintiff completed a nursing assistant training program in March 2011 (Tr. 33-34). In addition, at the administrative hearing, Plaintiff conceded that she was actively seeking employment (Tr. 33).

Thereafter, Gene Burkhammer, a vocational expert, testified at the hearing. Mr. Burkhammer stated that he found no past relevant work for the Plaintiff (Tr. 45). The ALJ then posed a hypothetical question to Mr. Burkhammer, asking him to assume someone of the same age, education, and past work as Plaintiff, who was limited to a range of light work, with the added limitations of no climbing of ladders, ropes, or scaffolds, and only occasional climbing of ramps and stairs, no work at unprotected heights or work around dangerous machinery, and who would be allowed to be off task five percent of the day (Tr. 44). In response, Mr. Burkhammer stated that such a person could work at the light level as a housekeeping/cleaner, as a sales attendant, or as a mail clerk (Tr. 44).

In response to questions from Plaintiff's counsel, Mr. Burkhammer stated that a requirement for a sit/stand option would reduce the residual functional capacity to a sedentary level (Tr. 45).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520(c) and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by

Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security*, 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters*, 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts two assignments of error:

> Whether the Administrative Law Judge properly evaluated the opinions of Dr. Eugilio Sioson, M.D., an examining physician.
>
> Whether the Administrative Law Judge misread the record as to Plaintiff's ability to participate in vocational rehabilitation, thus leading the judge to question Plaintiff's credibility.

Substantial evidence supports the ALJ's decision as to the weight given to the opinion of one-time examiner, Dr. Sioson.

The ALJ was not required to uncritically accept the conclusions of one-time examiner, Dr. Sioson (Pl.'s Br. 10-13). In accordance with the regulations, the ALJ reasonably determined that Dr.

Sioson's opinion was entitled to no weight because it was not well supported by his objective findings, and inconsistent with the evidence of record. Hence, substantial evidence supports the ALJ's determination.

Consulting examiner opinions are not entitled to controlling weight under the Commissioner's regulations. *See*, 20 C.F.R. Section 416.927. Rather, consulting source opinions are afforded weight according to the factors set forth in 20 C.F.R. Section 416.927, including whether they are supported by objective findings, consistent with the record as a whole, and the extent of the physician's relationship to the claimant (which, in the case of an examining consultant, is only a one-time examining relationship). *See,* 20 C.F.R. Section 416.927(c).

The ALJ correctly concluded that Dr. Sioson's opinion regarding Plaintiff's work-related limitations was not supported by his physical examination and diagnostic study findings. The ALJ discussed all of Dr. Sioson's examination findings (Tr. 18-19). Plaintiff's argument does not discuss decision pertaining to both Dr. Sioson's positive and unremarkable findings (Tr. 18; Pl.'s Br. at 13-14). Furthermore, after considering the entire examination, the ALJ correctly concluded that Dr. Sioson's opinion was too restrictive, in light of the benign to mild examination and diagnostic findings (Tr. 18-19). An x-ray of Plaintiff's lumbar spine, ordered by Dr. Sioson, was entirely normal (Tr. 18-19, 353). In addition, Dr. Sioson determined that Plaintiff had a normal gait, good (4/5) muscle strength in her upper and lower extremities, and no radiculopathy or inflammation (Tr. 18-19, 347-48).

Dr. Sioson's opinion, which was based upon a single examination of Plaintiff, was not supported by the evidence in the record. The record indicates that Plaintiff had not sought any treatment from a physician for her back since 1981 or ankle since 2009 (Tr. 18, 35, 41). Furthermore, while seeking treatment for heartburn in May 2011, Dr. Dasarathy performed a muscoskeletal and neurological examination of Plaintiff, which was normal (Tr. 18, 383). Dr. Dasarathy found that

Plaintiff had no tenderness in her lumbar spine, exhibited full ROM, walked with a normal gait, and hard normal reflexes, sensation, and motor strength in her lower extremities (Tr. 383). In addition, Plaintiff did not report any back or left ankle pain to Dr. Dasarathy (Tr. 18, 382). Furthermore, diagnostic studies of Plaintiff's back and left ankle indicated mild limitations. Plaintiff's lumbar spine x-ray was normal (Tr. 18-19, 353). MRI's of Plaintiff's left ankle and foot showed mild degenerative joint disease and mild tenosynovitis, but were otherwise unremarkable (Tr. 18-19, 355-56). The studies showed no evidence of re-fracture, tear, inflammation, or muscle injury, and intact tendons and ligaments (Tr. 355-56). Finally, Dr. Sioson's opinion was inconsistent with the opinions of Drs. McCloud and Kloyp, to which the ALJ afforded considerable weight (Tr. 19). The ALJ correctly concluded that the opinions of the state agency physicians, who reviewed the record, were consistent with the objective medical and other evidence of record. Hence, they were entitled to more weight than a one-time examining source who did not have the benefit of reviewing the record (Tr. 18-19). *See*, Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (July 2, 1996) (a state agency physician may be entitled to more weight than an examining, or even a treating source, in appropriate circumstances such as when his opinion is more consistent with the evidence of record).

In conclusion, since Dr. Sioson's opinion was not supported by his diagnostic and objective medical findings and was contradicted by the evidence of record, the ALJ correctly concluded that his opinion should not be afforded considerable weight.

Finally, substantial evidence of record, including Plaintiff's infrequent medical treatment, relatively benign physical examination and diagnostic study findings, and daily activities, supports the ALJ's opinion that Plaintiff's subjective complaints of pain were only partially credible.

A two-step process is used to evaluate a claimant's subjective complaints. First, there must be objective clinical signs and laboratory findings that demonstrate the existence of a medically-

determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. Section 416.929(b). Once an ALJ concludes that a medical impairment could reasonably cause the alleged symptoms, he must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. 20 C.F.R. Section 416.929(c). In doing so, the ALJ considers the objective medical evidence, statements made by the claimant and her physicians, and claimant's daily activities. *Id.*; SSR 96-7p, 1996 WL 374186 (July 2, 1996). A strong indication of the credibility of a plaintiff's subjective complaints is their consistency with other information contained in the record. 20 C.F.R. Section 416.929(c)(4); SSR 96-7p. After an ALJ considers a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them entirely or in part. *See,* 20 C.F.R. Section 416.929. Hence, substantial evidence supports the ALJ's assessment of the Plaintiff's credibility pertaining to Plaintiff's subjective complaints.

The ALJ concluded that Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms were only partially credible (Tr. 17-19). The ALJ considered Plaintiff's functional limitations that were supported by the evidence of record, by limiting Plaintiff to light work that involved no ladder/rope/scaffold climbing, only occasional ramp/stair climbing, no exposure to environmental hazards, such as unprotected heights or dangerous machinery, and allowed Plaintiff to be off task five percent of the workday (Tr. 17). In conclusion, substantial evidence supports the ALJ's decision to afford Plaintiff's subjective complaints only partial credence.

Furthermore, the objective medical evidence of record does not support Plaintiff's subjective complaints. Plaintiff did not obtain treatment from a physician since 1981 for her back, and 2007 for her left ankle (Tr. 18, 35, 41, 355-56). In addition, Plaintiff stopped physical and chiropractic

treatment for her ankle in 2009 (Tr. 202). This lack of treatment contradicts Plaintiff's subjective complaints of disabling pain. In addition, during treatment from MetroHealth in 2011, Plaintiff did not report any pain in her back or ankle (Tr. 18, 41-42). Hence, Plaintiff's objective diagnostic and examination findings only support mild functional limitations (Tr. 353, 355-56, 383).

Also, other evidence of record, including Plaintiff's daily activities, is inconsistent with Plaintiff's subjective complaints. Plaintiff cares for her four young grandchildren, ages eleven months to three years, five days a week (Tr. 40). Moreover, Plaintiff testified that she was actively seeking employment and had just completed a nursing assistant certificate program (Tr. 33-34). Hence, Plaintiff's daily activities support the ALJ's determination that the intensity, persistence, and limiting effects of her impairments were not as severe as she claimed.

Plaintiff's argument that the ALJ's credibility analysis was flawed as a result of misinterpretation of Plaintiff's assessment in 2009 for a vocational rehabilitation program is harmless error (Pl.'s Br. at 14-15). Although the ALJ mistakenly indicated that the vocational rehabilitation assessment noted that Plaintiff was an appropriate candidate for services, the ALJ correctly interpreted the substance of the report (Tr. 18, 342). Based upon Plaintiff's "limited [vocational] interest" and own "perception of [her physical] limitations," the case manager determined that Plaintiff was an inappropriate candidate for services (Tr. 342). After this vocational rehabilitation assessment, Plaintiff, on her own initiative, completed a medical assistant training program to improve her vocational qualifications, and was actively seeking employment (Tr. 33-34). The ALJ relied upon the entire record, not one piece of evidence, in assessing the credibility of Plaintiff's subjective complaints (Tr. 17-20). Plaintiff's lack of medical treatment, mild objective and diagnostic findings, and activities, including care of four young children and completion of a medical assistant training program, upon which the ALJ relied, are substantial evidence supporting the ALJ's determination that

Plaintiff's subjective complaints were only entitled to partial credibility.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform work that exists in significant numbers in the national economy, and, therefore, was not disabled. Hence, she is not entitled to SSI.

Dated: October 2, 2013

***/s/George J. Limbert***
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE